JUAN ROSARIO QUIÑONES, Plaintiff and Appellant, v. MUNICIPALITY OF PONCE, Defendant and Appellee.

No. R-65-42.     Decided June 29, 1965.

*Práxedes Alvarez Leandri* for appellant. *Castro & Castro* for appellee.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

Section 96 of the Municipal Law in force (21 L.P.R.A. § 1603) provides in the pertinent part:

"(a) Any person having any claim against a municipal corporation for damages to the person or property, caused through the fault or negligence of the municipal corporation, shall present to the chief executive of the municipality a written notice setting forth clearly and concisely the date, place, cause and general nature of the damage sustained, the amount of monetary compensation or the type of remedy adequate to the damage sustained, the names and addresses of his witnesses and the address of the claimant as well as the place where he received medical treatment for the first time.

.    .    .    .    .    .    .    .

"(e) No judicial action may be instituted against a municipal corporation for damages caused by the fault or negligence of the latter if written notice thereof is not given in the form and manner and within the terms prescribed in this subtitle. The foregoing applies only to damages caused by any municipal corporation subsequent to the effectiveness of this subtitle."

On May 28, 1963, Mr. P. Álvarez Leandri, on behalf of Juan Rosario, addressed the following notice to the mayor of Ponce:

"May 28, 1963—Honorable Juan Luis Boscio—Municipality of Ponce, Puerto Rico—Sir: On November 6, 1959, Juan Rosario entered into a contract for the purchase of a parcel of land in the municipal cemetery of this city of Ponce, describing therein in detail the parcel B acquired by him and the official receipt number, namely, 2228, dated October 23, 1959. On May 15 of the present year, when Rosario went to visit the grave where his wife was buried, he found another person buried in his parcel notwithstanding it was duly identified with a cross and the words 'private property.' There is no question that there has been a breach of the contract of sale and that Rosario has experienced suffering and sustained damages which the Municipality of Ponce should repair and indemnify for the desecration or removal of the remains of his wife. I earnestly urge

that these facts be investigated and, once you are convinced of the damages suffered, that that municipality proceed judicially to pay Rosario a reasonable sum for the damages suffered. —Awaiting a reply, I remain, Very truly yours, Práxedes Álvarez Leandri. (s) P. Álvarez Leandri."

In April 1964 Juan Rosario Quiñones filed a complaint against the Municipality of Ponce claiming damages suffered as a result of the facts notified to the mayor in the letter copied above. A motion to dismiss filed by the municipality having been granted, plaintiff filed an amended complaint. He alleged substantially the following:

"2) That on November 6, 1959, plaintiff acquired from the Municipality of Ponce, defendant herein, a parcel of land in the civil cemetery of Ponce, having paid the selling price as per official receipt No. 2228, dated October 23, 1959.

"3) That the body of his wife Mercedes Nadal was buried in the parcel of land acquired by plaintiff from the Municipality of Ponce, the grave being identified with a stone and cement cross where the deceased's name was inscribed, showing that no other person could be buried in that parcel which was plaintiff's property.

"4) That on May 15, 1963, the Municipality of Ponce, defendant herein, through its civil cemetery employees, removed the remains of the wife of plaintiff herein, thereby desecrating the grave, and buried another person in plaintiff's parcel."

The fact of the remittance to the mayor of Ponce of the letter of May 28, 1963, was also alleged as well as the damages suffered by plaintiff and their amount.

The Municipality of Ponce answered admitting some facts and denying others, and as a special defense it alleged: "Plaintiff did not perform fully the contract of sale of the land referred to in the complaint."

On the day set for the hearing of the case on the merits, and while a pretrial conference was being held, the attorney for the municipality set up the defense that the complaint did not state facts to warrant a remedy in favor of plaintiff.

He based such defense on the insufficiency of the notice which plaintiff sent to defendant municipality. The parties agreed that the court should first pass upon the question of law thus raised, and to that effect they offered the letter of May 28, 1963 which plaintiff's attorney sent to the mayor of Ponce and a copy of a letter of June 5, 1963, which the attorney for the Municipality of Ponce wrote to the General Insurance Agency of Hato Rey, insurer of the municipality.

On February 11, 1965, the trial court held that the notice given to the mayor of Ponce did not comply fully with the requirements of § 96 of the Municipal Law, since "(1) it did not specify the amount of monetary compensation claimed, (2) it did not state the address of his witnesses or, in default thereof, that there were none, and (3) it did not set forth the address of claimant." Consequently, it granted the motion to dismiss and rendered judgment dismissing the complaint, with costs.

At plaintiff's request, we issued a writ of certiorari to review the judgment. We must decide (1) whether § 96 of the Municipal Law applies to actions for damages ex contractu, and (2) if the decision is in the affirmative, whether the notice sent to the mayor of Ponce complies substantially with the requirements of § 96 supra.

■ The action interposed by plaintiff herein stems from §§ 1054 and 1060 of the Civil Code (31 L.P.R.A. §§ 3018 and 3024).[1] If there was a breach of the contract of sale entered into by the municipality and plaintiff, such breach on the part of the municipality binds the latter for the damages

---

[1] "Section 1054.—Those who in fulfilling their obligations are guilty of fraud, negligence, or delay, and those who in any manner whatsoever act in contravention of the stipulations of the same, shall be subject to indemnify for the losses and and damages caused thereby."

"Section 1060.—The losses and damages for which a debtor in good faith is liable, are those foreseen or which may have been foreseen, at the time of constituting the obligation, and which may be a necessary consequence of its nonfulfilment."

caused. In *Camacho* v. *Catholic Church*, 72 P.R.R. 332 (1951), we said at p. 340: "As we said in *Maldonado* v. *Municipality of Ponce*, 39 P.R.R. 226, 228, 'The gravamen of the action was the violation by defendant of the sepulchre previously sold and delivered to plaintiff. The opening of the vault and the removal of remains therefrom by the municipality was not only a tort but also a breach of the contract of sale. The sale to Velázquez was only a link in the chain of events which led up to and explained the breach of the previous contract entered into with plaintiffs. . . .' Since there was a breach of contract the defendant is liable, pursuant to the provisions of §§ 1054 and 1060 of the Civil Code, *supra*, for damages once the same are proved."

■ This is therefore a claim for damages ex contractu. Does the Municipal Law in force require that in order to exercise an action of this nature against a municipality compliance be first had with the notice required in § 96? It seems to us that neither from the language employed in that section nor from its legislative history may it be inferred that that was the legislative intent. On the contrary, there are convincing statements that the provisions of § 96 were incorporated in the Municipal Law to be applied to those claims for damages ex delictu arising out of §§ 1802 and 1803 of the Civil Code (31 L.P.R.A. §§ 5141 and 5142).

According to the provisions of § 96(a), the prenotice to the chief executive is required of any person having claims of any kind against a municipal corporation "for damages to the person or property, caused through the fault or negligence of the municipal corporation." Among the requirements to be met by the written notice is the place where claimant first received medical treatment. The provision "for damages caused by the fault or negligence of the latter" (referring to the municipal corporation) is repeated in subd. (e) of that section, whereby no judicial action may be instituted against

municipal corporations unless written notice thereof is given within the term and in the manner therein specified.

It may be seen that the language employed in this section, insofar as it seeks to place emphasis on the judicial actions to which it refers, is similar to that of § 1802 of the Civil Code which, as is known, provides that a person who by an act or *omission* causes damage to another, "when there is fault or negligence, shall be obliged to repair the damage so done." We have already said that this section of the Civil Code is the source of the actions for damages through fault or negligence. *Rivera* v. *Rossi*, 64 P.R.R. 683 (1945).

In the course of the debate in the House of Representatives of the bill which became the Municipal Law, representative Rodolfo Aponte proposed an amendment to incorporate the provision of H.B. 163 introduced by him in the corresponding section of the bill, which turned out to be § 96. When said representative was requested to explain the purpose of his amendment, he stated as follows:

"Mr. Aponte: With pleasure. One of the most serious problems confronting the municipalities of Puerto Rico, particularly the large municipalities and also the State Government, is the filing of actions for damages *at a time when the year granted by law for the filing of such actions is about to expire.* Let us not talk at this moment, because it is even more serious in the case of minors, because the law recognizes to the minor his cause of action until one year after reaching majority. That is already a special case, but the municipalities of Puerto Rico constantly— I can attest to that on the basis of my own experience as attorney for the Capital during a number of years—the municipalities constantly confront actions in which a citizen claims several thousand dollars because he fell on a sidewalk on a dark night at 2 a.m., or at whatever hour it may be; he fell on a street. Negligence of the municipality in maintaining a hole on a sidewalk, a hole or a street in bad condition, or a street which was being repaired, the lamp was removed and the citizen fell. Many times these claims may be easily verified; some times the records appear in the municipal hospital; some times there is

a police report corroborating what that citizen says; *but some times also the damages are claimed on the 364th day after the occurrence, one day before prescription.* The municipality is confronted with a claim for $10,000 for fracture of an ankle or a wound on the head from a fall or whatever it may be. Witnesses are needed; there are none. The municipality has no witnesses to determine whether or not it is true that such a thing occurred. They go to the police to get the police records; there is none. They go to the hospital; there is none. Yet, it is confronted in court with the testimony of a witness whose truthfulness can be neither affirmed nor denied. And even witnesses, persons who perhaps came out together from the movies, came out together from a party; perhaps they were together and one of them dislocated his ankle in a hole on a sidewalk, but notice was not given to anyone. And on many occasions the element of malice may even be present if the case is not filed until sufficient time has passed, when the disclosures of the investigations are no longer available. I know from personal experience that I have had to compromise, to recommend to the Board of Commissioners to compromise actions because it is not possible to contradict the sworn statement of a plaintiff, a physician, who claimed to have slipped several months ago on a slimy sidewalk and there is no way of obtaining testimony to confirm or to deny it. If the notices were given promptly to the municipal authority, with sufficient urgency, the municipal authorities could investigate and verify the certainty of the fact and the extent of the damages. The purpose of my proposed amendment is to establish, as a requirement sine qua non for the filing of a claim for damages against a municipal corporation, that notice be given in an authentic manner of the fact that such damage occurred, setting forth a series of circumstances required by the statute, to enable the municipal corporation to diligently verify the correctness, the certainty of such fact, and be in a position to defend itself if such a thing is false or acquiesce if it is true." 10-III Journal of Proceedings of the Legislative Assembly of Puerto Rico, Regular Session 1595 (1958). (Italics ours.)

■ From the examples given by the Representative in explaining the purpose of the amendment, as well as from the repeated reference to the one-year term for prescription

of actions, it is evident that he was referring exclusively to actions for damages arising out of § 1802 of the Civil Code, and that those were the actions which accrued only upon written notice to the chief executive. These actions for damages to persons or to property, caused through the fault or negligence of the municipality, are those which prescribe after one year. The actions for damages caused through the breach or nonperformance of a contract prescribe after 15 years. *Segarra* v. *Vivaldi*, 55 P.R.R. 153 (1939). The legislative intention is quite evident to the effect that the notice requirement was established for actions for damages which prescribe after one year and to no others, and which, as we said before, are those caused through fault or negligence, as required by § 1802 of the Civil Code.

In *Mangual* v. *Superior Court*, 88 P.R.R. 475 (1963), we said that "apparently § 96 was taken mostly from § 50–e of the General Municipal Law of New York, McKinney's, Consolidated Laws of New York, Book 23, pp. 85–86." Apparently, also, subd. (a) of § 96 was taken in part from § 50–i of the New York statute which provides in the pertinent part:

"§ 50–i. Presentation of tort claims commencement of actions.
"1. No action or special proceeding shall be prosecuted or maintained against a city, county, town, village, fire district or school district for personal injury or damage to real or personal property alleged to have been sustained by reason of the negligence or wrongful act of such city, county, town, village, fire district or school district or of any officer, agent or employee thereof, including volunteer firemen of any such city, county, town, village, fire district or school district or any volunteer fireman whose services have been accepted pursuant to the provisions of section two hundred nine–i of this chapter, unless, (a) a notice of claim shall have been made and served upon the city, county, town, village, fire district or school district in compliance with section fifty–e of this chapter."

Thus, in New York the exercise of actions for damages to persons or property through the fault or negligence of the municipal corporation is subject, among other requirements, to the prenotice required by § 50–e of the statute which, as we have already seen, refers to actions arising out of torts. It has been held that § 50–e of the General Municipal Law of New York does not apply to actions not arising out of an act other than a tort. 40 N.Y. Jur. 320, § 1065.

█ The mere fact that breach of a contract may be a wrongful act of the municipal corporation does not make claimant's action for damages an action in tort and, hence, subject to the prenotice required by the Municipal Law.[2]

In other American jurisdictions it has also been held, construing language similar to that of our statute, that in actions for damages through the fault or negligence of the municipal corporation the prenotice requirement does not apply to actions on the theory of breach of a contract. *Lund v. Village of Princeton*, 85 N.W.2d 197; 18 McQuillin, Municipal Corporations 563, § 53-155; 2 Antieau, Municipal Corporation Law 83, § 11.17.

Since plaintiff in this case is not bound to present to the chief executive of the Municipality of Ponce the written notice required by § 96(a) of the Municipal Law because the action is one for damages for breach of a contract, we need not decide whether the notice which plaintiff's attorney sent to the chief executive complies substantially with the statutory requirements.

The judgment rendered by the Superior Court, Ponce Part, on February 11, 1965, will be reversed and the case remanded for further proceedings.

---

[2] *Holbrook* v. *City of Saratoga*, 58 So.2d 862.